UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re:<br>    BRIAN EDWARD HUGHES,<br>        *Debtor* | : <br> : <br> : <br> : | Case No.:  19-31125 (AMN)<br>Chapter 7 |
| HAND CRAFTED BRANDS, LLC,<br>5 COTTON LLC,  BCDM, INC.,<br>TALIEK CAPITAL, LLC,<br>DINGLE BEVERAGES LLC, and<br>HEAVY FUEL LLC,<br>        *Plaintiffs*<br>v.<br>BRIAN EDWARD HUGHES,<br>        *Defendant* | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Adv. Proc. No.:  21-03003 (AMN)<br><br>Re: AP-ECF No. 1, 29 |

**MEMORANDUM OF DECISION
GRANTING MOTION FOR DEFAULT JUDGMENT IN PART,
DENYING CHAPTER 7 DISCHARGE TO DEBTOR BRIAN EDWARD HUGHES
AND SCHEDULING CONTINUED PRE-TRIAL CONFERENCE**

Because the debtor in the underlying Chapter 7 case here evaded the judicial process by (i) failing to comply with clear court orders that required him to appear for an oral examination under oath after being served with a lawfully issued subpeona, and, (ii) failing to preserve and produce financial inforamtion and records, he will be denied a bankruptcy discharge.  Without compliance with orders, rules and laws, relief from debt cannot follow.

I.  **INTRODUCTION**

This case commenced with the filing of an involuntary Chapter 7 bankruptcy petition against the debtor and defendant, Brian Edward Hughes ("Debtor").  The petitioning creditors are also three of the plaintiffs in this adversary proceeding:  Heavy

Fuel, LLC, Dingle Beverages, LLC, and 5 Cotton, LLC. An order for relief entered on August 22, 2019 (the "Order for Relief Date"), when Mr. Hughes did not contest the involuntary petition. Now, the plaintiffs – three (3) petitioning creditors and three (3) additional creditors: Hand Crafted Brands, LLC, BCDM, Inc., and Taliek Capital, LLC – ask the court to enter a default judgment denying the Debtor a discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(3), and (a)(6). AP-ECF No. 29.

First, and primarily, plaintiffs seek judgment on Count One of the complaint by alleging the Debtor should be denied a Chapter 7 bankruptcy discharge under Bankruptcy Code § 727(a)(6)[1] because he persistently failed to obey court orders directing him to appear at an examination authorized pursuant to Fed.R.Bankr.P. 2004, for more than a year.

Second, plaintiffs seek denial of the Chapter 7 discharge pursuant to § 727(a)(3) by alleging the Debtor improperly transfered estate property after the entry of the Order for Relief when he liquidated an annuity and spent the proceeds.

Finally, plaintiffs allege the Debtor's failure to keep and preserve records relating to his financial condition and financial transactions warrants denial of the Chaper 7 discharge pursuant to § 727(a)(2)(A).

The plaintiffs' pending motion seeks no relief as to Counts Four, Five and Six of the complaint, which assert that specific debts are not dischargeable pursuant to Bankruptcy Code § 523(a).

---

[1] Title 11, United States Code, is the "Bankruptcy Code." References to statutory sections are to the Bankruptcy Code unless otherwise specified.

2

## II. **JURISDICTION**

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b), and the United States District Court for the District of Connecticut's General Order of Reference dated September 21, 1984. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) (determinations as to the dischargeability of particular debts) and (J) (objections to discharge). Venue is properly before this court because this adversary proceeding arises under a Chapter 7 case pending in this District. 28 U.S.C. § 1409(a).

## III. **RELEVANT FACTUAL BACKGROUND**

Before 2019, the Debtor was a member and manager of Hand Crafted Brands, LLC (the "Company"), one of the plaintiffs in this adversary proceeding. AP-ECF No. 29-2[2], Affidavit of William J. Shea, II, ¶ 4. In 2015, the Debtor formed the Company to acquire and market exclusive liquor and wine products. AP-ECF Nos. 1, ¶ 3; 29-2, ¶ 3. There were several investors in the Company, including the other plaintiffs. AP-ECF Nos. 1, ¶ 9; 29-2, ¶¶ 2, 8. Together the other plaintiffs invested more than $1,000,000.00 in the Company. AP-ECF No. 29-2, ¶ 5. In early 2019, the investors became frustrated with the Debtor's lack of disclosure regarding the Company's finances and in April 2019, they removed the Debtor as the Company's manager. AP-ECF No. 29-2, ¶¶ 5-7. During the removal process, the Debtor failed to provide the Company's books and records to investors, instead turning over only unused checks for a Company bank account. AP-ECF No. 29-2, ¶¶ 8-11, 15. At some point in 2019, the Debtor indicated to the investors that the Company's books and records were stored at an office on Durham Road in

---

[2] Citations to the docket in case no. 19-31125 are noted by "ECF No. __" Citations to the docket of the adversary proceeding, case no. 21-3003, are noted as "AP-ECF No. ___".

3

Madison, Connecticut, but a search was unfruitful. AP-ECF No. 29-2, ¶¶ 22-23. A forensic accountant hired by the investors then discovered that prior to the filing of the involuntary petition here, the Debtor caused the Company to incur large business liabilities, failed to pay the Internal Revenue Service, and, used Company funds to pay his own expenses. AP-ECF No. 29-2, ¶¶ 14, 16, 17.

## IV.    THE INVOLUNTARY BANKRUPTCY PROCEEDING

### *Involuntary Bankruptcy Proceeding*

After removing the Debtor from the Company, three of the investors filed a Chapter 7 involuntary petition against the Debtor pursuant to Bankruptcy Code § 303 on July 10, 2019 (the "Chapter 7 Case"). ECF No. 1. As noted, the Debtor did not appear or contest the involuntary petition and an Order of Relief entered on August 22, 2019, creating a Chapter bankrutpcy estate. ECF No. 23.

### *Trustee's Motion to Compel*

Following the entry of the Order for Relief, Chapter 7 Trustee Kara S. Rescia (the "Trustee") sought to compel the Debtor to file all required schedules and statements pursuant to §521, provide required documents, and, attend a meeting of creditors pursuant to § 341. ECF No. 64. The court ordered the Debtor to comply with §§ 521(a)(1) and (a)(3) following a hearing (the "Trustee's Compel Order"). ECF No. 75. When the Debtor failed to comply the Trustee sought a contempt order. ECF No. 88. The Debtor appeared in person during the hearing on January 22, 2020, acknowledged his lack of compliance, and indiciated he was retaining an attorney. ECF No. 108. Following the hearing on that day, Attorney Richard Croce filed a Notice of Appearing for the Debtor in the Chapter 7 Case. ECF No. 104. The court again ordered the Debtor to comply with §§ 521(a)(1) and (a)(3). ECF No. 108.

4

During this time, the court was considering the petitioning creditors' motion seeking sanctions in the form of attorney's fees and costs incurred in compelling the Debtor's appearance at a Rule 2004 examination. See, ECF Nos. 80, 108, 17, 118. The Trustee also sought reimbursement for her time spent seeking the Debtor's compliance in the amount of $1,365.00. ECF No. 118. On January 31, 2020, the Debtor finally filed the required schedules and statements. ECF Nos. 123, 124, 131. Shortly thereafter the court approved a stipulation between the Debtor, the Trustee, and the petitioning creditors regarding payment of the sanction amounts due, resulting in a savings to the Debtor if he paid on time. ECF Nos. 157, 159. The Debtor then failed to pay timely, but later consented to the application of his exempt proceeds from the sale of a limited liability membership interest to pay the amounts owed. ECF No. 285; 306.

### *Petitioning Creditor's Motion to Compel a Rule 2004 Exam*

Around the same time the Trustee was trying to get the Debtor to file the bankruptcy schedules and statements every Chapter 7 debtor must prepare and file, the petitioning creditors requested and received authorization to examine the Debtor pursuant to Fed.R.Bankr.P. 2004 ("Rule 2004 examination"). ECF Nos. 40, 42. The Debtor was served in hand with a subpoena *duces tecum* commanding him to appear for a Rule 2004 examination on November 26, 2019, and to produce documents. See, ECF No. 29-1, Affidavit of Patrick Boatman, ¶ 8.

Despite substantial investments of time by lawyers for the examining creditors and the Debtor, the quest to examine the Debtor pursuant to Fed.R.Bankr.P. 2004 lasted over a year, required the issuance of a civil bench warrant (*capias*), and ultimately failed. *See*, ECF Nos. 40, 42, 80, 245, 270, 273, 316, 334, 336, 337, 339, 346, 348, 349, 351, and 355. While the court assumes familiarity with this saga as detailed in the Order Finding

5

the Debtor in Contempt of Subpoena and Court Order, including the Debtor's failure to appear on at least ten occaisions, the court highlights a number of the milestones in this journey for purposes of this memorandum of decision.  ECF No. 385.

On October 1, 2020, the court heard the petitioning creditor's third motion for sanctions against the Debtor for failing to appear for a Rule 2004 examination.  ECF Nos. 316, 332.  Attorney Richard Croce stated duirng the hearing that the Debtor had agreed to appear in person for the Rule 2004 examination on October 14, 2020.  Attorney Croce further represented the Debtor agreed that should he fail to appear, the court would have cause to enter a civil bench warrant or *capias* directing the United States Marshal to apprehend the Debtor and bring him to the court to be examined.  The court approved the Debtor and Petitioning Creditors' proposed order and entered the Order Granting In Part the Third Motion to Compel Debtor's Attendance at 2004 Examination requiring the Debtor to produce documents and appear for an examination on October 14, 2020 (the "October Compel Order").  ECF No. 334.  Notwithstanding his agreement, the Debtor failed to appear.  ECF Nos. 336, 337.

Giving the Debtor another chance to explain his non-appearance, the court directed the Debtor to appear at a status conference in October 2020.  ECF No. 339.  This time the Debtor personally appeared promising he would appear on November 12, 2020 for an examination.  ECF No. 348.  Following the October 2020 status conference, the court ordered the Debtor to appear on November 12, 2020 at 9:00 a.m. and to produce documents (the "October Scheduling Order").  ECF No. 349.  The court also issued a *capias* directing the United States Marshal to apprehend the Debtor and bring him to the court on November 12, 2020, at 10:00 a.m., or as soon as practical thereafter (the "First Capias") if the Debtor failed to appear at 9:00 a.m. ECF No. 351.  After entry of the First

6

Capias and the October Scheduling Order, Attorney Croce moved to withdraw as Debtor's counsel.  ECF No. 356.

The Debtor failed to appear on November 12, 2020.  ECF Nos. 370, 376.  On November 16, 2020, the court entered an order holding the Debtor in contempt of the October Scheduling Order and finding good cause for entry of another *capias* (the "Contempt Order"; the "Second Capias").  ECF No. 380, 381.  The day after entry of the Contempt Order and Second Capias, Attorney Joseph J. D'Agostino, Jr. filed a Notice of Appearance on behalf of the Debtor. ECF Nos. 382, 383.  Attorney Croce was then permitted to withdraw as counsel.  The Contempt Order was thereafter amended to clarify that the Debtor could cure the civil contempt by completing the Rule 2004 examination (the "Amended Contempt Order").  ECF No. 385.

Within days after the Contempt Order and Second Capias entered, a status conference was held.  Attorney D'Agostino appeared and represented the Debtor would appear for a continued status conference on November 19, 2020 and for the Rule 2004 examination on November 24, 2020.  The court entered an order directing the Debtor to appear on November 19 and 24, 2020 (the "November Scheduling Order").  ECF No. 395.  The Debtor did not appear on November 19 or November 24.  ECF Nos. 400, 402, 409.

The Debtor eventually turned up, having self-surrendered to the United States Marshal on Friday, December 11, 2020, at 4:00 p.m.[3]  The Petitioning Creditors' counsel was not in a position to proceed with the Rule 2004 examination due to the late hour and the distance counsel would need to travel to get to the court.  The Debtor promised he

---

[3]    For various reasons the U.S. Marshal did not detain the Debtor from December 11, 2020 to December 14, 2020.

7

would appear on Monday, December 14, 2020, at 9:00 a.m.  The Debtor failed to appear on Monday, December 14, 2020 and the Rule 2004 examination was not completed.

On January 14, 2021, the Debtor was arrested by federal agents after a grand jury returned an indictment charging him with wire fraud, money laundering and tax evasion (the "Criminal Case").  *See, USA v. Hughes*, 3:21-cr-00002 (JBA).  A trial has not proceeded at this time.

In early 2021, the petitioning creditors sought sanctions against the Debtor in the form of attorney's fees.  ECF No. 461.  After Attorney D'Agastino acknowledged there was a factual and legal basis for the imposition of a sanction but challenged the amount of attorneys fees sought, the parties agreed to an order imposing a sanction of $27,500 on the Debtor for the time spent by the petitioning creditors and the Trustee seeking the Debtor's compliance with court orders, which the court entered.  ECF Nos. 504, 508.

***The Deadlines to Object to Discharge***

Because of the difficulty of obtaining information from the Debtor, the court extended the deadline to object to the Debtor's discharge pursuant to Bankruptcy Code § 727 or to the dischargeability of any particular debt pursuant to Bankruptcy Code § 523.  *See*, ECF Nos. 73, 74, 132, 209, 229, 232, 255, 280, 307, 308, 314, 413, 422, 442, 444, 526.  For the plaintiffs and certain other creditors including Dorm Damage LLC and Salute American LLC, the deadline to file a complaint pursuant to Bankruptcy Code §§ 523 or 727 was March 18, 2021. ECF No. 413.  The deadline for the Trustee and the Office of the United States Trustee to object to the Debtor's discharge pursuant to Bankruptcy Code § 727 is April 19, 2022.  ECF No. 575.

## V. THIS ADVERSARY PROCEEDING CASE

This adversary proceeding has proceeded with notably less drama than the Chapter 7 Case, given the Debtor's failure to appear and defend.[4] The plaintiffs timely commenced this adversary proceeding seeking determinations of non-dischargeability regarding their claims, and more broadly, denial of the Debtor's Chapter 7 bankruptcy discharge. Regarding service of the summons and complaint on Mr. Hughes, Attorney D'Agostino represented to the court that he was authorized to, and did, accept service on the Debtor's behalf, but did not agree to represent the Debtor in this adversary proceeding. *See*, ECF No. 530, p. 4, L. 8-24. After service of the summons and complaint, the Debtor failed to appear and has not answered the complaint. After concluding the Debtor was adequately served with the summons and complaint, was not in the military, and, had nonetheless failed to appear and defend, the Clerk entered a default against the Debtor. AP-ECF Nos. 18, 19; 29-3.

### *Default Judgment Motion*

Following entry of default, the plaintiffs moved for the entry of a default judgment as to Counts One, Two and Three of the complaint seeking to deny the Debtor a Chapter 7 discharge pursuant to Bankruptcy Code §§ 727(a)(2)(B), (a)(3), (a)(6) and Fed.R.Civ.P. 55 made applicable to this proceeding by Fed.R.Bankr.P. 7055 ("Default Judgment Motion"). AP-ECF No. 29. Plaintiffs did not seek a default judgment on Counts Four, Five and Six regarding the non-dischargeability of specific claims pursuant to subsections of Bankruptcy Code § 523.

---

[4] I note the record of the Chapter 7 Case is clear that the Debtor is aware of this adversary proceeding and has chosen not to defend. No effort has been made by the Debtor or anyone on his behalf to stay this adversary proceeding pending the resolution of the criminal proceeding.

To support the request for default judgment, the plaintiffs filed and served affidavits from plaintiffs' counsel, Patrick W. Boatman, and William J. Shea, a member of Dingle Beverages, LLC. AP-ECF Nos. 29, 29-1, 29-2.[5] During a hearing in the Chapter 7 Case regarding an unrelated matter held on October 27, 2021, Attorney D'Agostino represented the Debtor was aware of the pendency of the Default Judgment Motion. ECF No. 550 at 00:06:04-00:06:20.

The plaintiffs' strongest objection to entry of a bankruptcy discharge is premised on the Debtor's failure to comply with court orders entered in the Chapter 7 Case, pursuant to Bankruptcy Code § 727(a)(6). I note the record of the Chapter 7 Case regarding the Debtor's violation of the court's orders is unambiguous, and either Mr. Hughes or his counsel (at times Attorney Croce, at other times Attorney D'Agostino) have acknowledged many of the violations. The orders at issue in the Chapter 7 Case are summarized in the following table.

| Date of Order | Order | ECF No. |
| --- | --- | --- |
| 10/4/2019 | Order Authorizing Petitioning Creditors to conduct Rule 2004 Examination | ECF No. 42 |
| 12/5/2019 | Trustee's Compel Order | ECF No. 75 |
| 10/7/2020 | October Compel Order | ECF No. 334 |
| 10/23/2020 | October Scheduling Order | ECF No. 349 |
| 10/23/2020 | First Capias | ECF No. 351 |
| 11/16/2020 | Second Capias | ECF No. 381 |
| 11/17/2020 | Amended Contempt Order | ECF No. 385 |
| 11/18/2020 | November Scheduling Order | ECF No. 395 |

---

[5] At the time the Default Judgment Motion was filed and served, the Debtor was located at this address pursuant to the conditions of his release pending trial in the Criminal Case. *See*, ECF No. 29 in Case No. 3:21-cr-002 (JBA). Approximately one month after the filing of the Default Judgment Motion, the Debtor's address changed to, and currently is, Sunrise Terrace, 1 Larson Drive, Danbury, Connecticut, 06810, pursuant to the modified conditions of his release ordered in the Criminal Case. *See*, ECF Nos. 47, 50 in Case No. 3:21-cr-002 (JBA). The Debtor filed a change of address form for his current address in the Chapter 7 Case but has not filed a separate change of address form in this adversary proceeding.

10

The plaintiffs also claim the Debtor deserves to be denied a bankrutpcy discharge pursuant to Bankruptcy Code § 727(a)(3), because he failed "to keep or preserve any recorded information, inlcuding books, documents, records and papers, from which the debtor's financial condition or business transactions might be ascertained," without justification. More particularly, the plaintiffs assert the Debtor failed to keep and preserve the records of the Company (Hand Crafted Brands, LLC) for 2015 to 2019 when he was the manager, member, and, sole person with access to its finances.

Finally, the plaintiffs argue the Debtor failed to earn a bankruptcy discharge pursuant to Bankruptcy Code § 727(a)(2)(B) because he concealed an interest in an annuity valued at approximately $60,000 on the Order for Relief Date that was property of the bankruptcy estate, and, then liquidated and spent it without authority. AP-ECF No. 29-1, ¶¶ 64-65; ECF Nos. 123.

### VI.  APPLICABLE LAW

Entry of a default judgment without a hearing is permissible where, as here, affidavits and the record of the Chapter 7 Case comprise the evidentiary record. A court considering a default judgment pursuant to Fed.R.Civ.P. 55 may, "conduct hearings or make referrals" in order to, among other things, "determine the amount of damages[,] establish the truth of any allegation by evidence[,] or investigate any other matter." Fed.R.Civ.P. 55(b)(2)(B)-(D). "[T]he court may ... enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Francisco Ayala De Jesus, Fredy Salustio Flores, individually and on behalf of others similarly situated, v. P&N Cuisine Inc., Nimnual Likituarin*, 20-CIV-3619 (RA), 2021 WL 2380065, at *2 (S.D.N.Y. June 10, 2021)(*citing, Bricklayers & Allied Craftworkers*

*Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (per curiam)).

The "entry of [] default judgment is entrusted to the sound judicial discretion of the court." *Stevenson v. Riverside Motorcars LLC*, 3:21-CV-00320 (KAD), 2021 WL 5051667, at *2 (D. Conn. Nov. 1, 2021) (*citing, Shah v. N.Y. State Dep't of Civil, Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). In making this determination and evaluating the allegations asserted against a defendant, the Court may "deem[ ] all the well-pleaded allegations in the pleadings to be admitted." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 108 (2d Cir. 1997). Here, the court also has the benefit of the record in the Chapter 7 Case. When – as here – the defendant against whom a default judgment may enter is acting *pro se*, "the Court 'must be especially hesitant to enter a default judgment.'" *In re Keswani*, 20-10315-JLG, 2021 WL 1940802, at *4 (Bankr. S.D.N.Y. May 13, 2021)(internal citation omitted).

### *Denial of a Discharge Pursuant to § 727*

A "court must keep in mind that § 727 imposes an extreme penalty for wrongdoing, and it must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." *In re Jones*, 786 Fed.Appx. 309, 312 (2d Cir. 2019)(summary order)(*citing*, *In re Chalasani*, 92 F.3d 1300, 1310 (2d Cir. 1996). "[A]lthough § 727 should be construed in favor of the bankrupt, "a blatant violation [of a court order] should not be condoned." *In re Jones*, 786 Fed.Appx. at 312. "Before denying a discharge, then, the bankruptcy court should weigh the detriment to the proceedings and the dignity of the court against the potential harm to the debtor if the discharge is denied. In doing so, it should consider such factors as the intent behind the bankrupt's acts – were they willful or was there a justifiable excuse; was there injury to

12

the creditors; and is there some way that the bankrupt could make amends for his conduct." *In re Jones*, 786 Fed.Appx. at 312 (citations and internal quotations omitted).

The plaintiffs bear the burden of establishing each of the elements of § 727 by a preponderance of the evidence. *In re Postiglione*, 8-16-75377-REG, 2019 WL 2590946, at *6 (Bankr. E.D.N.Y. June 24, 2019). In both objections to discharge generally and to dischargeability of particular debts, this burden effectuates the Bankruptcy Code's objective to provide "the debtor 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.' " *Fleet Credit Card Servs. v. Macias (In re Macias),* 324 B.R. 181, 187 (Bankr. E.D.N.Y. 2004) (quoting *Cazenovia Coll. v. Renshaw (In re Renshaw)*, 222 F.3d 82, 86 (2d Cir. 2000)).

### *Section 727(a)(6)*

Section 727(a)(6) permits denial of a bankruptcy discharge if the debtor has refused "to obey any lawful order of the court, other than an order to respond to a material question or to testify." 11 U.S.C. § 727(a)(6). The essential elements of a § 727(a)(6) cause of action are "1) the court issued an order in the case, and 2) the debtor refused to obey the order." *Hirsch v. Hirsch (In re Hirsch)*, 2009 Bankr. LEXIS 3303 *17, 2009 WL 3297278, at 6 (Bankr. E.D.N.Y. Oct. 13, 2009). "[O]nce a plaintiff has shown that the debtor violated a court order, the burden shifts to the debtor to either justify the violation or prove that the violation did not in fact occur." *In re Meyer*, 16-72983 (REG), 2020 WL 4219678, at *2 (Bankr. E.D.N.Y. July 9, 2020)(internal citation omitted).

### *Section 727(a)(3)*

"The purpose and intent of [§ 727(a)(3)] is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *In re Cacioli*, 463 F.3d

13

229, 234 (2d Cir. 2006)(internal citations omitted).  Section 727(a)(3) will deny a debtor a discharge if

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.
> 11 U.S.C. § 727(a)(3).

"When the debtor destroys, conceals or falsifies books of a partnership or corporation that are necessary to proper understanding of the debtor's financial condition and business transactions, a discharge should be denied. 6 *Collier on Bankruptcy* ¶ 727.03 (16th)(when the records fail to explain business transactions through which a large shrinkage of assets resulted, a discharge should be refused upon the ground of failure to keep proper books or records.). "[A]lthough [Section] 727(a)(3) focuses on records relating to the debtor's personal financial affairs, his failure to keep adequate financial records regarding the business transactions of a closely held corporation that are necessary to determine his personal financial affairs may result in the denial of a discharge." *U.S. Trustee v. Cefalu (In re Cefalu)*, Docket Nos. 17-11382, 18-90011, 2020 Bankr. LEXIS 992, at *8 (Bankr. N.D.N.Y. Apr. 13, 2020)(*citing, O'Hearn v. Gormally (In re Gormally)*, 550 B.R. 27, 49 (Bankr. S.D.N.Y. 2016).  "Complete disclosure in the bankruptcy case, to the trustee and the scheduled creditors, is a *quid pro quo* for discharge of debts."  4 *Norton Bankr. Law & Practice* 3d § 86:9 (2021).

To implement this record-keeping requirement, § 727(a)(3) provides a two-step approach.  First, the "initial burden lies with the creditor to show that the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained."  *In re Cacioli*, 463 F.3d at 235.  "If the

14

creditor shows the absence of records [of the debtor], the burden falls upon the bankrupt to satisfy the court that his failure to produce them was justified." *In re Cestaro*, 598 B.R. 520, 528 (Bankr. D. Conn. 2019)(*citing, In re Cacioli*, 463 F.3d at 234).

### *Section 727(a)(2)(B)*

Section 727(a)(2)(B) provides, in pertinent part, that a debtor should not be granted a discharge if "the debtor, with intent to hinder, delay, or defraud a creditor … has transferred, removed, destroyed, mutilated, or concealed ... property of the estate, after the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(B). To prevail on a claim under this section, the plaintiffs must prove "(1) the debtor, (2) transferred or concealed (3) property of the bankruptcy estate (4) with the intent to hinder, delay or defraud the creditor (5) after the filing of the bankruptcy petition." *In re Kupersmith*, 614 B.R. 428, 438 (Bankr. D. Conn. 2020). A movant must establish "actual intent to hinder, delay or defraud." *In re Postiglione*, 2019 WL 2590946, at *7 (*citing, Glaser v. Glaser (In re Glaser)*, 49 B.R. 1015, 1019 (Bankr. S.D.N.Y. 1985)). "While fraudulent or improper intent is sometimes shown via direct proof, courts often rely on 'badges of fraud' to establish the intent required under § 727(a)(2) based on circumstantial evidence." *In re Sofer*, 519 B.R. 28, 37 (Bankr. E.D.N.Y. 2014). According to the Second Circuit, badges of fraud include:

> (1) the lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
> (5) the existence or cumulative effect of a pattern or series of transactions of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
> (6) the general chronology of the events and transactions under inquiry.
> *In re Kaiser*, 722 F.2d 1574, 1582-83 (2d Cir. 1983).

A debtor who "deliberately and recklessly dissipate[s] money which otherwise would fall into the hands of the bankruptcy trustee or creditors, is, *a fortiori*, committing waste that has the ineludible effect of hindering or delaying creditors." *In re Freitas*, 261 B.R. 556, 561 (Bankr. D. Conn. 2001); *see also, In re Hoyt*, 337 B.R. 463, 469 (Bankr. W.D.N.Y. 2006) (finding transfer and concealment of funds in which debtor had an interest and then deposited into his daughter's account was grounds for denial of discharge under § 727(a)(2)(B)).

## VII. DISCUSSION

### a. The Debtor is not entitled to a discharge pursuant to § 727(a)(6)

A bankrutpcy discharge is a privilege that must be earned. Here, Mr. Hughes's repeated failure to comply with court orders requiring him to appear to answer questions about his financial transactions and records, and, to produce financial records or explain their unavailability, requires that his Chaper 7 bankruptcy discharge be denied.

Based on the record of the Chapter 7 Case, I conclude that Mr. Hughes violated five (5) court orders. *See*, ECF Nos. 42, 75, 334, 349, 351, 381, 385, 395. The Debtor knowingly and without excuse failed to comply with the Trustee's Compel Order, the October Compel Order, the October Scheduling Order, the Amended Contempt Order, and the November Scheduling Order. ECF Nos. 75, 334, 349, 385, 395. Mr. Hughes's repeated failure to comply with the court's orders to appear to answer questions at a Rule 2004 examination – even if that meant asserting his right to remain silent in response to some questions pursuant to the Fifth Amendment to the United States Constitution – remains unexcused. Mr. Hughes made numerous promises to appear in person on particular dates, leading other parties to prepare, schedule court reporters, incur expenses, travel, and, appear themselves. The promises were made orally before the

16

court by Mr. Hughes himself, or by his counsel who stated they were acting at his direction, leaving no doubt that the Debtor's refusal to obey these five (5) court orders was knowing and wilfull.

The remaining three (3) orders – the Order Authorizing the Petitioning Creditors to examine the Debtor, the First Capias, and the Second Capias – do not independently support the plaintiffs' § 727(a)(6) claim. ECF Nos. 42, 351, 381. These three orders were directed to others. For example, the Order Authorizing the Petitioning Creditors to take the Debtor's Rule 2004 examination permits the creditors to do something (*i.e.,* to serve a subpoena for an examination). ECF No. 42. Both the First Capias and Second Capias are directed to the United States Marshal, not to the Debtor. ECF Nos. 351, 381.

Having satisfied the two elements required for a denial of discharge based on a failure to comply with a court order pursuant to § 727(a)(6) – an order entered and was knowingly not obeyed – the plaintiffs are entitled to judgment on Count One.

### b. The Debtor is not entitled to a discharge pursuant to § 727(a)(3)

Plaintiffs offer an affidavit from William J. Shea II, a member of one of the Company's investors to satisfy their burden to demonstrate Mr. Hughes failed to keep and preserve the records from which his financial condition or business transactions, including those of the Company (Hand Crafted Brands, LLC), might be ascertained for the time he was the managing member from 2015 through 2019 (the "Shea Affidavit"). AP-ECF No. 29-2; *see also,* AP-ECF Nos. 1, ¶¶ 16-22; 29, ¶¶ 28-35 (complaint allegations). The Shea Affidavit details additional efforts the investors undertook to obtain the Company's financial records from the Debtor, including failed attempts to meet with the Debtor and to locate records at various office locations used by the Debtor. AP-ECF No. 29-2, ¶¶ 7-12,15, 21-23. The Debtor's failure to keep and preserve records inhibited

17

the plaintiffs' ability to ascertain the Debtor's financial condition or business transactions. This record satisfies the first requirement of a § 727(a)(3) claim and demonstrates the absence of financial records.

The burden to show the failure to keep and produce records might be justified falls on the defendant, Mr. Hughes. Through default, he failed to contest the Default Judgment Motion and the court must conclude he failed to meet his burden. There is nothing in the record of this adversary proceeding or the Chapter 7 Case to support a finding that Mr. Hughes's failure to keep and produce records was justified. Instead, the record in this court suggests the opposite conclusion and the plaintiffs are entitled to the entry of a default judgment on Count Three of the complaint pursuant to § 727(a)(3).

### c. The Plaintiffs' § 727(a)(2)(B) claim fails for lack of evidentiary support

I am unpersauded the record supports the entry of a default judgment on Count Two of the complaint pursuant to Bankruptcy Code § 727(a)(2)(B) because the affidavit by Attorney Boatman is made without personal knowledge and indicates reliance on unsworn statements from the Trustee, while the attachments generally lack evidentiary weight. AP-ECF Nos. 1, ¶¶ 16-23; 29, ¶¶ 24-25, 29-1, ¶ 72, 73. The affidavit attaches unauthenticated copies of annuity account statements and selected transcript pages from the Debtor's ex-wife's deposition. AP-ECF No. 29-1, pp. 12-19. Even if the account statements were authenticated, they show merely that an account exists, but do not reveal any liquidation of the account or use of the funds. The unauthenticated transcript pages indicate the Debtor's ex-wife does not know where the money she received for child support originated. These unauthenticated records, along with plaintiffs' counsel's understanding from statements made by the Trustee would be inadmissible at trial and so are insufficient to support entry of a default judgment denying the Debtor a discharge.

18

The denial of a bankrutpcy discharge is a harsh penalty and must be strictly construed against the plaintiffs. *In re Jones*, 786 Fed.Appx. at 312. Additionally, a court must hesitantly enter default judgments against unrepresented parties. *In re Keswani*, 2021 WL 1940802, at *4. With these principles in mind, I conclude the plaintiffs failed to meet their burden for a default judgment on Count Two of the complaint pursuant to Bankruptcy Code § 727(a)(2)(B).

## VIII.   CONCLUSION

Based on the extraordinary record of the underlying Chapter 7 Case, denial of Mr. Hughes's bankruptcy discharge is necessary and appropriate. This is not a close call. Rather, the record here clearly demonstrates the Debtor repeatedly disregarded the authority of the court, flagrantly disobeyed clear court orders, and, failed to keep or produce important financial records. Simply put, Mr. Hughes earned a denial of his Chapter 7 discharge.

I have considered all other arguments raised by the plaintiffs and conclude none are persuasive or supported by the record. If necessary for review by the District Court, this Memorandum of Decision constitutes the bankruptcy court's proposed findings of fact and conclusions of law.

**This is a final order subject to rights of appeal. As contemplated by Fed.R.Bankr.P. 7054, incorporating Fed.R.Civ.P. 54(b), I determine there is no just reason for delay in entering a final judgment as to Counts One and Three of the complaint, notwithstanding that Counts Two, Four, Five and Six will remain pending. The time within which a party may file an appeal of a final order of the bankruptcy court is fourteen (14) days after it is entered on the docket.** *See,* **Fed.R.Bankr.P. 8002(a)(1).**

Accordingly, it is hereby

**ORDERED**: That, for the reasons stated, the motion for default judgment, AP-ECF No. 29, is GRANTED IN PART and DENIED IN PART as set forth herein; and it is further

**ORDERED**: That, the motion for default judgment as to Counts One and Three of the complaint is granted and a separate default judgment against Brian Edward Hughes shall enter in favor as to those portions of the complaint denying the Debtor a Chapter 7 discharge; and it is further

**ORDERED**: That, the motion for default judgment as to Count Two of the complaint is denied and Count Two remains pending; and it is further

**ORDERED**: That, a Pre-Trial Conference to address the status of the surviving portions of the complaint (Counts Two, Four, Five and Six) shall be held on March 2, 2022, at 11:30 a.m., should the remaining counts of the complaint remain pending at that time.

Dated this 25th day of January, 2022, at New Haven, Connecticut.



Ann M. Nevins
Chief United States Bankruptcy Judge
District of Connecticut